CORNELIUS LUCY v. TIMOTHY LUCY.[1]

April 8, 1909.

Nos. 15,922—(188).

**Deed of Homestead—Estoppel.**

A father, without joining his insane wife, conveyed his homestead to one son. The deed was reformed, so as to require the son to make certain payments to the father during his life, and to make other payments for the father after his death. The father abandoned the homestead, and by action secured the reformation of the deed. The son made the stipulated payments. Two years later the father made a deed to another son for the consideration of love and affection and one dollar. It is *held* that the record of the deed and other proceedings, and possession of the land by plaintiff, gave notice or knowledge of the rights of the son in possession; that the father was estopped from asserting the invalidity of the first deed; and that this estoppel operated to make that deed valid as against the son, to whom the second deed had been executed.

Action in the district court for Scott county to quiet title to eighty acres of land and to set aside and cancel a deed executed to defendant by Daniel Lucy, the father of the parties hereto, the former own-

[1] Reported in 120 N. W. 754.

er of the land. The answer alleged that at the time of the execution of the deed the property conveyed was a homestead and no decree of court had been entered debarring the insane wife of Daniel Lucy from her right in the land or giving him authority to sell the land without her signature. That after the execution of the first deed he had abandoned his homestead. The case was tried before Morrison, J., who made findings and as conclusions of law granted the relief demanded. From the judgment entered pursuant to the findings, defendant appealed. Affirmed.

*W. C. Odell, E. Southworth,* and *W. N. Southworth,* for appellant.
*Francis Cadwell* and *F. C. Irwin,* for respondent.

JAGGARD, J.

Plaintiff and respondent and defendant and appellant were sons of one Daniel Lucy. His wife and their mother during all the time here involved was, and now is, in an insane asylum. On the sixth day of August, 1901, the father conveyed the land here involved to the plaintiff under an agreement by deed recorded a week later. After the execution of the deed, the father left the premises, which were his homestead, ceased to reside thereon, and wholly abandoned the same. Both parties agree that his homestead right then ceased. Plaintiff, after the execution of the deed, took possession of the land, and has ever since occupied it. In April 1904, a court, having jurisdiction of the premises and parties, filed an order for a decree in an action by the father against plaintiff to set aside the deed on the grounds that it had been procured by fraud and undue influence. By that decree it was adjudged that the plaintiff, after the death of the father, should pay certain sums for masses for the repose of the souls of certain persons named therein and certain legacies therein specified, and that in case the wife should recover her reason after the father's death the plaintiff should provide a good and sufficient home, care, and attention for his mother, and upon her death to provide her with suitable burial. The deed was reformed by said judgment in order to make it set forth the full agreement of the parties. Judgment was entered in accordance with the order in December, 1905. The record shows no appeal. The question of the validity of provisions as to masses is not here involved. Plaintiff agreed in the deed

107 M.—28

to pay the father $150 per year, during his life, to provide a good home, board, and washing upon the premises, and, in case the father did not desire to live with the plaintiff, to pay for such board and washing in addition to the yearly sum of $150. In so far as the resulting agreement imposed upon plaintiff the duty to pay sums during the father's life, he had fully complied with the terms of the agreement. On the twenty seventh day of October, 1905, the father conveyed the land by warranty deed to the defendant, another son, for the consideration of love and affection and one dollar. On the first day of December, 1905, the father returned to the plaintiff, and resided with him on the premises since that time. This action was brought by plaintiff in possession against defendant to secure an adjudication that he was the owner of the premises and to set aside the deed executed by the father to defendant. The trial court, in effect, found facts as previously stated, and ordered judgment for plaintiff. This appeal was taken from the judgment entered accordingly.

The one question argued by the defendant is this: Could the father, at the time he was occupying the eighty acres as his homestead, convey the same to the plaintiff by deed, executed while the father occupied the premises as his homestead, without the signature of his wife to that deed? This is not, as the record appears to us, the essential question on the merits.

It may be, and will be here, conceded that the original deed by the father to the son was not valid, because it lacked the wife's signature (G. S. 1894, § 5522), and that chapter 75, p. 150, of the Laws of 1891, did not operate to give effect to the deed, even as to the husband's interest. None the less the facts found by the trial court justify its conclusion. In brief, the father, without the wife joining, conveyed his homestead to one son, here plaintiff. That son agreed to make certain payments to the father during his life, and to make certain other payments for the father after his death. The deed was recorded. The father abandoned the homestead. The son made the stipulated payments. Two years later the father made a deed to another son for the consideration of love and affection and one dollar. The record of the deed and of the other proceedings, and the possession of the land by the plaintiff, gave notice or knowledge to the defendant of all of these facts. The defendant, in consequence, was estop-

ped, if the father was estopped. It is clear that the father could not assert in equity the invalidity of the deed. The plaintiff had actually parted with considerable sums of money for the father's benefit. No offer in any form was made to return these sums. If the defendant's theory should prevail, plaintiff would, at most, have a right of action in the nature of quasi contract against the father without recourse to the land. There is good authority to the effect that a sale of the homestead, inoperative because the homestead right has not been released by both husband and wife, may be rendered valid by subsequent abandonment. Thompson, Homesteads, p. 415, § 483. And see McDonald v. Crandall, 43 Ill. 231, 92 Am. Dec. 112; Hall v. Fullerton, 69 Ill. 448. In Adams v. Gilbert, 67 Kan. 273, 275, 72 Pac. 769, 100 Am. St. 456, Cunningham, J., said:

"The husband might by his actions, words, or silence, when he should have spoken, confirm a deed to the homestead executed by himself alone, or estop himself from denying its validity, so as to make it convey title, after its homestead character had ceased, or after the death of the wife. The protection to a homestead afforded by constitutional and statutory provisions lasts no longer than the occupancy of the premises as a homestead." The ability of the wife to avoid the transfer is not here involved. Estoppel of the husband would not prevent the assertion by the wife of her homestead rights.

If this reasoning be not conclusive, defendant is clearly estopped by the judgment in the action to which the father was a party plaintiff, by which the deed was reformed and confirmed as reformed. That action was begun at a time when both parties conceded the homestead right had ceased to exist. No appeal was taken from it, nor was any motion made after the order for decree had been filed. It was after this that the father executed the deed to the defendant son. The same reasoning which is involved to convey title to defendant compels the conclusion that this judgment estopped the father from asserting title. The father was bound by the judgment, as he would have been bound by the deed, if no judgment had been rendered. If the deed could be good under any circumstances, the judgment must be good under the circumstances shown. Plaintiff was in possession. Defendant had notice of his rights, including those conferred by the judgment, independent of the fact whether or not the

judgment was so far recorded by lis pendens or otherwise as to give defendant record notice of its existence. Barton v. Drake, 21 Minn. 299, is entirely consistent with this conclusion. In that case, as appears at the foot of page 306, the plaintiffs, who as husband and wife claimed the homestead, were in possession of the homestead premises at the time the suit was begun. If in this case the father had remained in possession with the plaintiff, it would be obviously true that the estoppel by the judgment would no more have been conclusive than the estoppel by the deed. Neither would have been of legal effect. In other words, the judgment rendered when the homestead had been abandoned bound the father as much as the subsequent deed could have, if no such judgment had intervened.

That upon the assumption here made the trial court was wrong in the reason assigned in his memorandum for his conclusion "b," namely, "that the provision of chapter 75 of the Laws of 1891, the law in force at the time of the execution of the deed," does not alter the conclusion here reached; for the validity of a right of judgment is not affected by the fact that it was rendered for a wrong reason. County of Chisago v. St. Paul & D. R. Co., 27 Minn. 109, 6 N. W. 454; Chauncey v. Wass, 35 Minn. 1, 25 N. W. 457, 30 N. W. 826.

Affirmed.

BROWN, J. (dissenting).

In my opinion a conveyance of the homestead by the husband, without the joinder of the wife, which the statutes declare shall not be valid, cannot be rendered valid, under the rule of estoppel or otherwise, by the subsequent conduct of the husband alone. Barton v. Drake, 21 Minn. 299; Law v. Butler, 44 Minn. 482, 47 N. W. 53, 9 L. R. A. 856; Murphy v. Renner, 99 Minn. 348, 109 N. W. 593, 8 L. R. A. (N. S.) 565, 116 Am. St. 418. Nor can his separate deed be validated by decree of court rendered in an action to which the wife is not a party. The homestead under our law is community property, subject to sale and conveyance only by the concurrence of both husband and wife. The property in question in this action was, at the time the wife became insane, the family homestead, and the subsequent abandonment thereof by the husband, in consequence of his

deed to plaintiff, did not change its character as such. Montgomery v. Dane, 81 Ark. 154, 98 S. W. 715, 118 Am. St. 37, 11 Am. & Eng. An. Cas. 421, and note.